**IT IS SO ORDERED.**

**Dated:  02:32 PM February 5 2013**

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-55621 |
| | ) | |
| DEAN R. BRADLEY | ) | |
| CYNTHIA E. BRADLEY | ) | CHAPTER 7 |
| | ) | |
| Debtors | ) | JUDGE MARILYN SHEA-STONUM |
| | ) | |
| KRAUS ANDERSON CAPITAL, INC. | ) | **Adv. No. 11-5082** |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | **ORDER AND MEMORANDUM** |
| | ) | **OPINION** |
| DEAN R. BRADLEY | ) | |
| | ) | |
| Defendant | ) | |

 This matter is before the Court on the amended complaint of Plaintiff Kraus Anderson Capital, Inc. ("Plaintiff") asking this court to find the amount of $196,087.46 non-dischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6).  See Amended Complaint [docket #36].

This proceeding arises in a case referred to this Court by Order No. 2012-7 entered in this District on April 4, 2012. It is determined to be a core proceeding pursuant to 28 U.S.C. §§ 157(A) and (I) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

Based upon the Complaint, Joint Stipulations #1 [docket #26], Joint Stipulations #2 [docket #35], Joint Stipulations #3 [docket #50], Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Plaintiff's Proposed Findings") [docket #53], Defendant's Findings of Fact and Conclusions of Law ("Defendant's Proposed Findings") [docket #55], Defendant's Post-Trial Brief [docket #59], Plaintiff's Closing Argument [docket #60], the arguments of counsel, all pleadings filed, testimony at the August 10, 2012 trial, and pursuant to Fed. R. Bankr. P. 7052, the Court determines that the Defendant's debts are dischargeable. The Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On November 30, 2010, Defendant, Dean Bradley, and his wife filed a joint petition for relief under Chapter 7.

2. On March 21, 2011, this adversary proceeding was filed. Defendant owns Bradley Machinery, LLC ("Bradley Machinery"). Joint Stipulations #1 at 4.

3. The facts that give rise to this case began when Plaintiff and Bradley Machinery entered into "various loan and security agreements…whereby Plaintiff provided financing for Bradley Machinery's purchase of equipment used in Bradley's Machinery's business." Id. at 5. The purchased equipment was "subject to security

-2-

11-05082-amk    Doc 61    FILED 02/05/13    ENTERED 02/06/13 08:25:35    Page 2 of 12

This proceeding arises in a case referred to this Court by Order No. 2012-7 entered in this District on April 4, 2012. It is determined to be a core proceeding pursuant to 28 U.S.C. §§ 157(A) and (I) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

Based upon the Complaint, Joint Stipulations #1 [docket #26], Joint Stipulations #2 [docket #35], Joint Stipulations #3 [docket #50], Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Plaintiff's Proposed Findings") [docket #53], Defendant's Findings of Fact and Conclusions of Law ("Defendant's Proposed Findings") [docket #55], Defendant's Post-Trial Brief [docket #59], Plaintiff's Closing Argument [docket #60], the arguments of counsel, all pleadings filed, testimony at the August 10, 2012 trial, and pursuant to Fed. R. Bankr. P. 7052, the Court determines that the Defendant's debts are dischargeable. The Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On November 30, 2010, Defendant, Dean Bradley, and his wife filed a joint petition for relief under Chapter 7.

2. On March 21, 2011, this adversary proceeding was filed. Defendant owns Bradley Machinery, LLC ("Bradley Machinery"). Joint Stipulations #1 at 4.

3. The facts that give rise to this case began when Plaintiff and Bradley Machinery entered into "various loan and security agreements…whereby Plaintiff provided financing for Bradley Machinery's purchase of equipment used in Bradley's Machinery's business." Id. at 5. The purchased equipment was "subject to security

interests in favor of Plaintiff." Id. Defendant personally guaranteed Bradley Machinery's obligations. Id. at 6.

4. In 2008, Defendant met with Plaintiff's representatives to tell them that Bradley Machinery had sold equipment that was subject to Plaintiff's security interest. Id. at 10. Unbeknownst to Plaintiff, three other pieces of equipment had also been sold. Joint Stipulations #2 at 10.

5. The parties entered into an amendment to the loan documents in December 2008. Id. at 11.

6. Weeks later, Bradley Machinery sold equipment subject to Plaintiff's security interests without paying the proceeds to plaintiff. Id. at 13.

7. The parties entered into a settlement agreement in March 2009 (the "Settlement Agreement"). Id. at 15.

8. As part of the agreement, Bradley Machinery and Defendant executed a confession of judgment, which authorized Plaintiff to enter judgment against Bradley and Defendant for $308,828.12. Id. at 16. The settlement agreement covered all outstanding amounts for all equipment for which Plaintiff provided Defendant financing for Bradley Machinery to buy. Joint Stipulations #3 at 3.

9. In 2010, Defendant lied to the Plaintiff's auditors regarding the location of the equipment subject to Plaintiff's security interests. Joint Stipulations #2 at 17. He failed to tell them that the equipment had been sold. Id.

10. Testimony at trial showed that Plaintiff's representative sent auditors to investigate the status of the equipment. However, once told by Defendant that the equipment was at another job site, the auditor ended the inquiry.

11. At trial, Plaintiff's representative repeatedly testified that Plaintiff was not happy with the fact that Defendant "lied" at various times about selling the equipment. Nevertheless, Plaintiff did not conduct any meaningful investigation about the status and/or location of its equipment. In fact, Plaintiff chose to enter into an amended security agreement and later a Settlement Agreement after already believing that Defendant "lied."

## LAW AND DISCUSSION

### A. 11 U.S.C. § 523(a)(2)

Under 11 U.S.C. § 523(a)(2), a debt is not dischargeable if the extension of the underlying loan was obtained by false pretenses, a false representation, or actual fraud. In this case, Plaintiff argues that the Defendant lied to Plaintiff about selling equipment in order to induce the Plaintiff to enter into the Settlement Agreement. Plaintiff's Proposed Findings at 34.

Under 523(a)(2)(A), a creditor must prove:

1. The debtor obtained, *inter alia*, money or a renewal or refinancing of existing financing through a material misrepresentation, that at the time, debtor knew was false or made with a material misrepresentation as to its truth;

2. The debtor intended to deceive the creditor;

-4-

3. The creditor justifiably relied on the false misrepresentations; and

4. The creditor's reliance was the proximate cause of the loss.

See *Rembert v. AT&T Univ. Card Servs., Inc.*, 141 F.3d 277, 280-81 (6th Cir. 1998), citing *Longo v. McLaren*, 3 F.3d 958, 961 (6th Cir. 1993). "Exceptions to discharge are to be strictly construed against the creditor." Id., citing *Manufacturer's Hanover Trust v. Ward*, 857 F.2d 1082, 1083 (6th Cir.1988).

A creditor must establish that "it was the debtor's intent to deceive him into extending credit through a false misrepresentation." *Cote v. Catherman*, 331 B.R. 333, 337 (Bankr. N.D. Ohio 2005), citing *Weeber v. Boyd*, 322 B.R. 318, 324 (Bankr. N.D. Ohio 2004). Moreover, the inquiry is "whether a debtor subjectively intended to fulfill a promise at the time he made it." Id. The Court must look at circumstantial evidence of the debtor's state of mind at the time of the alleged deception. Id. In other words, the Court must examine the totality of the circumstances. *James v. McCoy*, 114 B.R. 489, 498-99 (Bankr. S.D. Ohio 1990); See also *Imbody v. Nat'l City Bank*, 104 B.R. 830 (Bankr. N.D. Ohio 1989).

Here, it is not disputed (based on Defendant's own testimony) that he lied to Plaintiff on at least one occasion regarding the fact that he sold equipment. However, in looking at the totality of the circumstances, it becomes clear that Plaintiff's actions at the time it entered into the Settlement Agreement and thereafter do not support a finding that of justifiable reliance or that the debtor's deceit was the proximate cause of its loss. Moreover, whether the debtor did not intend to pay the settlement amount was not established. Defendant testified that after entering into the Settlement Agreement, he reduced overhead and let all of his employees go by 2009.

-5-

Defendant testified that based on history,[1] he believed his business would recover and he would be able to pay his debts. The money Defendant obtained from the sale of the equipment went to rents, utilities, notes, and wages. Moreover, he eventually paid about $100,000 over several years pursuant to the Settlement Agreement. Both parties acknowledged the macroeconomic circumstances that upended many business plans to the 2009 timeframe. Based on these facts, the Court finds that, at the time he entered into the Settlement Agreement, Defendant fully intended to perform and in fact had performed in the past.

Importantly, "unlike a debtor who files bankruptcy immediately after borrowing money, raising suspicion that he may have never intended to repay, the Debtor here filed bankruptcy over a year after he" signed the Settlement Agreement. Id. at 338. The Settlement Agreement was signed on March 27, 2009, and Debtor filed for bankruptcy on November 30, 2010. Debtor's actions and the timing of events evidences that he intended to repay his debt.

In *Rembert,* the Court stated that a credit card holder's use of a credit card does not demonstrate an ability to pay, but an intention to repay. *Rembert,* 141 F.3d at 281. To hold otherwise would eliminate the main reason people use credit cards: "because they often lack the ability to pay in full at the time they desire credit." Id. The use of a credit card is analogous here. Defendant entered into security agreements and the Settlement Agreement because he did not have the ability to purchase equipment at the time he obtained it.

Finally, the Court notes that, to be successful on this claim, Plaintiff had to have reasonably relied on defendant's alleged misrepresentations. "A lender must investigate

---

[1] Mr. Bradley testified that he has a college degree from Texas A & M University. After obtaining his degree, he went on to working in industrial distribution. Then, he began working for Ingersoll-Rand where he started in retail sales in Phoenix, Arizona, then went on to distribution sales. In that position, he worked with dealers to further penetrate the market with a goal of increasing market share. Mr. Bradley ultimately got connected with Kraus Anderson through YanMar America.

creditworthiness." *Manufacturer's*, 857 F.2d at 1084. Importantly, the Security Agreement[2] clearly granted Plaintiff permission to enter Defendant's property to "inspect all Collateral…verify Debtor's compliance with this Agreement; and…examine and copy Debtor's books and records relating to the Collateral." Security Agreement at 7. Despite this "Inspections" provision, it appears that the plaintiff did little to keep tabs on its collateral.

Testimony at trial showed that Plaintiff's representative did send auditors to investigate the status of the equipment. However, once told by Defendant that the equipment was at another job site, the auditor ended the inquiry. Given Plaintiff's own repeated claims that Plaintiff was not happy with the fact that Defendant "lied" about selling the equipment, it is surprising that Plaintiff did not conduct a more thorough investigation. In fact, Plaintiff chose to enter into an amended security agreement and later a Settlement Agreement despite already believing that Defendant "lied."

Actions under 11 U.S.C. § 523 are not meant to be substitutes for appropriate due diligence. Plaintiff could have done more to monitor the status of the equipment; therefore, it did not justifiably rely on defendant's alleged misrepresentations. Moreover, Plaintiff did not meet its burden in proving that Defendant did not intent to perform. The Court finds Mr. Bradley's testimony that he intended to perform quite credible. Accordingly Plaintiff's claim pursuant to 11 U.S.C. § 523(a)(2) fails.

---

[2] The parties had several Security Agreements, which all had identical language. For ease of discussion, throughout this Order and Memorandum, the Court references the October 11, 2007 Security Agreement and Promissory Note, which was introduced as Plaintiff's Exhibit 4 at trial.

11-05082-amk    Doc 61    FILED 02/05/13    ENTERED 02/06/13 08:25:35    Page 7 of 12

**B. 11 U.S.C. § 523(a)(4)**

Under 11 U.S.C. § 523(a)(4), a debt is not dischargeable if it was obtained by embezzlement. Plaintiff argues that "Defendant's sale of the equipment subject to Plaintiff's security interest and retention and use of the sale proceeds constitutes embezzlement." Plaintiff's Proposed Findings at 36.

In *In re Robinson*, 2012 WL 4715093 at *4 (Bankr. N.D. Ohio 2012), the bankruptcy court stated that "[a] creditor proves embezzlement by establishing that (1) he entrusted his property to the debtor or debtor lawfully obtained the property, (2) the debtor appropriated the property for a use other than that for which it was intended, and (3) the circumstances indicate fraud." *Robinson*, citing *Brady v. McAllister*, 101 F.3d 1165, 1173 (6th Cir.1996). See also *In re Sinchak*, 109 B.R. 273, 276-277 (Bankr. N.D. Ohio 1990) (stating that embezzlement requires "that property is acquired lawfully with the consent of the owner, the property is appropriated for the embezzler's own use, and some form of fraud or deceit is employed.")

Here, the Court finds that there is insufficient evidence that the debtor used the property for a use other than what was intended. According to the Security Agreement, Defendant was allowed to sell the collateral in "the ordinary course of business." Security Agreement at ¶6.[3]

---

[3] The only documents that had different language were:

1. The June 16, 2006 Dealer Credit Agreement, which stated that "Borrower may sell any item of Collateral in the ordinary course of Borrower's business for a price not less than the Advance made for such item of Collateral, unless otherwise agreed to in writing by Lender, provided Borrower pays Lender any amounts due under the Note as a result of such sale." Dealer Credit Agreement at 2. Based upon all the documents in this case and the testimony at trial, the Court is not convinced that the Dealer Creditor Agreement has any significant relation to the individual security agreements and notes. Kraus Anderson representative Mr. Jarussi's testimony suggested that he himself was unsure about the relationship.

2. The June 16, 2006 Promissory Note, which stated that "the entire unpaid Principal amount of all Advances…shall be due and payable in full if…any equipment…is sold." June 16, 2006 Promissory Note at 8. Testimony at trial demonstrated that the $117,000 from this Note had been paid off within 2 years. Therefore, this note is not related to any monies currently owed to Plaintiff.

Here, Defendant's testimony supports the fact that all the items sold were sold in the ordinary course of business. Therefore, the second element of embezzlement is not met.

Even if the language from the Dealer Credit Agreement and/or June 16, 2006 Promissory Note controlled any part of this action, the Plaintiff's claim under 11 U.S.C. § 523(a)(4), would still fail because it cannot meet the third element: the circumstances indicate fraud. See *Robinson*, 2012 WL 4715093 at *4. The Plaintiff has not presented sufficient evidence of fraud. There was no evidence that Defendant did not intend to pay what was owed. In fact, he ultimately signed a Settlement Agreement, again agreeing to pay. Further, he did end up paying $100,000.00 toward the Settlement Agreement – a sizeable amount.

Finally, Plaintiff has not demonstrated that this is anything more than a possible contract dispute. The Plaintiff has not produced sufficient evidence or case law supporting the contention that a breach of contract dispute can give rise to embezzlement or that this dispute is more than an alleged breach of contract dispute to which 11 U.S.C. § 523 would be applicable. In fact, in *In re Bucci,* 493 F.3d 635 (6th Cir. 2007), the Sixth Circuit Court of Appeals specifically stated "a breach of contract, without more, is not embezzlement." Again, Plaintiff has not demonstrated the required something "more". There is no evidence that supports a finding of fraud. Accordingly, Plaintiff's claim pursuant to 11 U.S.C. § 523(a)(4) fails.

### C.  11 U.S.C. § 523(a)(6)

Under 11 U.S.C. § 523(a)(6), a debt is not dischargeable if it caused willful and malicious injury. Plaintiff argues that "Defendant's sale of the equipment subject to Plaintiff's security

interest and retention and use of the sales proceeds were willful and malicious." Plaintiff's Proposed Findings at 41.

A willful and malicious injury occurs "if the debtor (1) intends to cause the consequences of his act, or (2) believes the consequences are substantially certain to occur." *In re Kennedy*, 249 F.3d 576, 580 (6th Cir. 2001).

Specifically, Plaintiff argues that Defendant "knew that he could not sell [the] equipment without turning the proceeds over to Plaintiff or without obtaining the prior consent of the Plaintiff." Plaintiff's Proposed Findings at 43. In reviewing the Security Agreement, the Court finds no requirement that Defendant had to turn over the proceeds from the sale. Moreover, as explained above, the Security Agreement does *not* require that Defendant obtain consent before selling items in the *ordinary course of business.*

Plaintiff goes on to argue that the Defendant "knew that by not turning the sale proceeds over to the Plaintiff or obtaining the Plaintiff's consent to the sale he would be injuring the Plaintiff." In order to constitute a "willful and malicious" injury, it is necessary that the Defendant have intended the "consequences of the act," not simply the act itself. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed. 2d 90 (1998). Here, there is no evidence that Defendant intended that Plaintiff would not be paid. In fact, his participation in the Settlement Agreement indicates just the opposite – he intended to repay his debt.

Again, moreover, Plaintiff has not demonstrated that this is anything more than a possible contract dispute. The Plaintiff has not produced sufficient evidence or case law supporting the contention that this dispute is more than an alleged breach of contract to which 11 U.S.C. § 523 would be applicable. Specifically, in *In re Shugarman,* the Court stated, "a mere breach of

contract will not support a finding of nondischargeability under § 523(a)(2)(A) or § 523(a)(6)… 'the mere breach of a promise to pay does not establish the existence of an intent to defraud. Otherwise, any breach of contract would be a nondischargeable debt.'" *In re Shugarman,* 2012 WL 2150335 *5 (Bankr. N.D. Ohio 2012), citing *Bartson v. Marroquin*, 441 B.R. 586, 593 (Bankr. N.D. Ohio 2010).

> In *In re Garritano,* the Court stated:
>
> Damages arising from breach of contract are non-dischargeable under 11 U.S.C. § 523(a)(6) when the debtor intended to cause the plaintiff harm through the breach of contract. See *Spring Works, Inc. v. Sarff* (*In re Sarff*), 242 B.R. 620, 626 (6th Cir. BAP 2000). The plaintiff must, however, show more than just a knowing breach of contract; plaintiff must also prove that debtor intended to cause him harm by breaching the contract. Id. See also *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (stating that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury" and a "knowing breach of contract" alone should not give rise to nondischargeability). A debtor intends to cause an injury when he "desires to cause the consequences of his act, or ... believes that the consequences are substantially certain from it." *Markowitz*, 190 F.3d at 463.

*In re Garritano,* 427 B.R. 602, 613 (Bankr. N.D. Ohio 2009).  See also, *In re Wikel,* 229 B.R. 6, 11 (Bankr. N.D. Ohio 1998), citing *In re Bullock-Williams,* 220 B.R. 345, 347 (6th Cir. BAP 1998); *In re Williams,* 362 B.R. 838, 841 (Bankr. N.D. Ohio 2006), citing In *re Riso,* 978 F.2d 1151, 1154 (9th Cir.1992); *In re Rahig,* 373 B.R. 829 (Bankr. N.D. Ohio 2007). The Court finds no evidence demonstrating that Defendant intended to cause harm by breaching the contract.  To the contrary, Defendant, if he breached the contract at all, did so in order to keep his business afloat.  Accordingly, Plaintiff's claim pursuant to 11 U.S.C. § 523(a)(6) fails.

Based upon the foregoing, this Court finds that all of Plaintiff's claims fail.  Defendant's debts are dischargeable.

-11-

It is so ordered.

*###*

cc (*via* electronic mail):
    Mike Moran    *as counsel for*    Defendant
    Joseph Wentzell    *as counsel for*    Plaintiff

-12-

11-05082-amk    Doc 61    FILED 02/05/13    ENTERED 02/06/13 08:25:35    Page 12 of 12